[Civ. No. 21351. Second Dist., Div. Three. Oct. 23, 1956.]

GILBERT S. FORTE, Respondent, v. JOHN M. SCHIEBE, Appellant.

C. Douglas Wikle for Appellant.

Wallace E. Wolfe and Percy V. Hammon for Respondent.

SHINN, P. J.—This is an appeal by defendant from a judgment on verdict awarding plaintiff $3,250 compensatory and $3,000 exemplary damages for assault and battery.

Plaintiff and defendant are law enforcement officers. Plaintiff is Supervising Liquor Enforcement Officer, Alcoholic Beverage Control Act, Southern California; he had been a chief petty officer in the United States Navy for 20 years and an employe of the federal government in the days of prohibition. Defendant is a crier in the United States District Court, having previously been in the office of the United States Marshal. The parties had known each other since 1928. At the time of the events that led to the present litigation neither was engaged in the performance of official duties.

The parties lived opposite each other in San Pedro. For a

long time they had been on unfriendly terms. Plaintiff testified that defendant had threatened him frequently, using toward him foul and insulting language and on several occasions had shoved him and poked him in the ribs with an elbow while they were leaving a Pacific Electric station. Defendant testified that plaintiff had threatened to kill him and his family, had thrown a rock through a window of a house of defendant's relative, had come across the street on three occasions uttering threats and using bad language until he had been taken by the collar by his, plaintiff's, wife and led back home. Each denied in toto all accusations of ungentlemanly conduct upon his part, claiming to have acted only defensively at all times. As we shall see, the trial produced some tall lying.

The undisputed facts of the alleged assault were that on a Sunday morning plaintiff was traversing an alley behind defendant's residence; defendant was in the rear, in or near his garage. Lucas, defendant's brother-in-law, was in his own yard nearby. There was an altercation characterized by the use of foul language and a physical encounter in which plaintiff received injuries to his head. At this point agreement among the witnesses as to the progress of events ceased and the problem of the jurors in the realm of the credibility of witnesses commenced. Plaintiff testified that he was unarmed and was leading a Pomeranian on a leash; defendant ordered him out of the alley and without provocation struck him violently about the left cheek with a shovel. Defendant testified that plaintiff had telephoned him twice early that morning and threatened to come over and bash in defendant's skull; Lucas was in the adjoining yard and called to him that plaintiff was coming; plaintiff entered the garage and struck him with a club; he shoved plaintiff out with his shoulder, plaintiff reentered the garage twice more and may have fallen against an incinerator in the scuffle. Lucas testified that plaintiff came running down the alley carrying a club and that he warned defendant; plaintiff entered the garage. Lucas did not testify whether he saw blows struck. A neighbor of defendant's, Mrs. Blake, from her window saw Schiebe strike Forte with a shovel. Her testimony fully corroborated that of plaintiff. Another neighbor, Mrs. Hansen, a witness for defendant, testified she heard loud swearing, saw plaintiff enter defendant's garage, but was concerned that her small son finish his breakfast and did not follow further developments. Plaintiff suffered substantial injuries.

■ The first assignment of error to be considered is that the court allowed the introduction in evidence of a defamatory letter allegedly written by defendant concerning plaintiff upon insufficient evidence that defendant wrote the letter. The evidence was sufficient. A comparison of the typing of the letter and that of defendant's typewriter disclosed significant similarities.

Upon complaint of Forte, Schiebe was prosecuted for battery and was acquitted. Defendant questioned plaintiff on cross-examination whether Schiebe had not been acquitted. Plaintiff's objection was sustained and the ruling is assigned as error. As nearly as we can understand from the record the fact of the acquittal was offered to prove that plaintiff, having instituted an unsuccessful prosecution of defendant, would feel frustrated, and biased and prejudiced in his testimony. The court ruled at one time that the judgment would be admitted, if produced, but the matter appears to have been dropped. We need not discuss the admissibility of the evidence. According to plaintiff he suffered from more than frustration. Moreover, time and again it was stated by the court and counsel in the presence of the jury that defendant had been acquitted. Plaintiff's attorney requested that the jury be instructed to disregard the discussion of the acquittal but the court declined to do so saying: "Oh, don't get worried. That jury is there performing a function."

■ Next defendant offered in evidence the record of a civil suit of *Forte* v. *Schiebe*. Plaintiff's objection was sustained. The record does not disclose the nature of the action except by vague statements which cast no light on the subject. However, we recognize the action as one that was before us in 1949 and is reported in 93 Cal.App.2d 22 [207 P.2d 881]. It is now asserted that plaintiff and his witness O'Malley, who testified in the present case to verbal abuse of plaintiff by defendant in the Pacific Electric Railway Station, testified in the same manner in the former case, and that since the court in that case found the allegations of such abuse to be untrue, the former judgment is conclusive of some material issue in the present case. Counsel says "The record of the prior case was offered as conclusive evidence upon the issue of malice upon which Respondent had offered testimony in the instant trial." There is no logic in this argument. It appears to have been born of the confusion during the trial in connection with defendant's endeavor to introduce the records of the former cases.

 We now come to the assignment of error attributed to the allegedly prejudicial remarks of the trial court. Counsel for defendant cited to the court the case of *Marriott* v. *Williams*, 152 Cal. 705 [93 P. 875, 125 Am.St.Rep. 87], to the proposition that the fact that Forte had unsuccessfully prosecuted Schiebe for assault would tend to prove bias and prejudice affecting Forte's testimony in the present case. In the cited case there was also a question of malice. In the discussion of defendant's offer of the record in the civil case, it was confused with the offer of the record in the criminal case and the question of bias of plaintiff as a witness was confused with the question of malice of the defendant in the assault. During the discussion the court made remarks as follows: "For a half a dozen good legal reasons the objection to the introduction of that record will have to be sustained. It has nothing to do with this case. The sole purpose that it could ever be used for would be to prove malice, and that, as this court says in this case, is so evident here by the actions of the parties that it is patent that no one can deny that they had the malice. . . . MR. WOLFE: If your Honor please, if there are to be any more statements, may they be made out of the hearing of the jury? THE COURT: No. The jury is part of this court. MR. WOLFE: I realize that, but, if your Honor please, we are now arguing the admissibility——THE COURT: You are not arguing it. I am not going to let you argue it. . . . the only relation that this case could bear to the previous case that you are now offering would be on the thin thread of a connecting line involving malice; and I am telling you that there is no basis for offering it here in support of malice when malice is confessed on both sides. The testimony of both these parties makes it manifest that there is malice between them. . . . Now, that shows that in that case the court let it get by as harmless error because it was admissible only in support of malice, and that the malice was already admitted by them in the record, the same as in this case. In this case the existence of malice on both sides cannot be disputed by either as to the other."

There was ample evidence to support a finding of malice on the part of defendant but it was not conclusive upon that issue. It could have been found that defendant acted upon a sudden impulse, with considerable provocation and under a mistaken notion as to plaintiff's intentions, and yet without legal justification. But after hearing the statements of the court it was unlikely that the jury would have found an

absence of malice. To be sure the court gave an instruction that the court had not stated nor intended to state its conclusions as to any of the controverted issues, and that any statement indicating the court's view should be disregarded. But the court had done exactly what it told the jury it had not done and there was no retraction of the statement that malice on the part of both parties was not only conclusively proven but admitted.

No fact is better known to trial lawyers than that the minds of jurors are easily swayed by statements from the bench as to the merits of the matters in issue. Especially is this true in the case of a venerable and respected judge whose considered and definite statements convey to the eager minds of jurors an implied direction as to what their finding should be on a material issue. Words spoken with finality, as in the present case, leave an indelible impression. The mere formal admonition that they should be forgotten was no more effective than would have been a statement that although the court meant what it said the jurors should forget that the court said it. The instruction did not remove the harm.

Plaintiff contends that defendant cannot complain of the statements of the court because he made no objection to them and no request that the jury be admonished to disregard them. By failure to protest in the trial court defendant did not forfeit the right to urge the point on appeal. We think a special admonition would not have cured the harm caused by the court's remarks respecting the existence of malice. Moreover, it appears from the record that if defendant had requested that the jury be admonished the request would have been refused.

Defense counsel experienced much difficulty in his efforts to produce his evidence as to the earlier litigation. He was not permitted to make a desired offer of proof nor to present any argument. There was extensive discussion between the court and counsel and numerous statements by the court in addition to those we have quoted. Some of them were considered by plaintiff's attorney to be prejudicial and he made a request with the result that is illustrated by the following passages: "MR. WOLFE: Your Honor, I must protest against this continually talking about that case as prejudicial. THE COURT: We will get rid of that by simply ignoring any further consideration of the matter. This case will have to stand and be decided on the facts that have been produced here through the regular channels of our method of procedure.

Mr. Wolfe: Would your Honor instruct the jury to disregard the discussion between Court and counsel regarding this file?

The Court: Never mind. Don't be worrying about the jury. When I get through reading my instructions to them, they will have a complete setup of what the law is which is to govern them. The colloquy, argument during the course of the trial in the presence of a jury between counsel and the Court, is a constant occurrence in busy courts. Notwithstanding that, each time the attorneys usually get up and say, 'Please instruct the jury it is none of their business to listen to this,' or they want to go into chambers. I am not one of those judges that tries my cases half in the dark and half in the light. I have them tried out in the wide open light, in the courtroom. If the jurors can't control their judgment and their consideration under the guidance and instruction of the Court, why, then it is just too bad that we don't have different kind of jurors. I have no fear of submitting any of these cases to the jurors that we are getting here in our courts at the present time.'' Following this the court instructed the jurors that they should not pay any attention to and should not believe or accept anything that the lawyers said. Although this would have been a proper occasion for an instruction that the jurors should disregard what the court had said, no reference was made to the court's remarks. We are convinced that any protest by defendant respecting the court's remarks would have been unavailing.

 We entertain no doubt as to the prejudicial effect of the court's statements upon the defendant's case. There was evidence from which the jury could have concluded that Schiebe's attack upon Forte was actuated by malice. At the same time it could have been concluded that although he was guilty of an assault he acted upon sudden impulse, with considerable provocation and without malice. But the jury found that Schiebe entertained malice and it assessed exemplary damages of $3,000. This issue was not fairly tried and that award may not be allowed to stand. However, the situation respecting compensatory damages is different. The court's statements respecting the existence of malice reflected upon the credibility and motives of Forte and Schiebe equally. They would have been as likely to convey a suggestion that Forte attacked Schiebe with a club as that Schiebe attacked Forte with a shovel. They bore no relation to and we think could not have affected the award of compensatory damages. As to those damages, the judgment should be affirmed. As

to the exemplary damages it should be reversed unless plaintiff consents to a modification which will eliminate the award of exemplary damages.

This is the third time the parties have been in court during the course of their ridiculous feud. They have had more than a fair share of the court's time. Plaintiff's right to compensatory damages was well established. The amount is reasonable. The evidence would have sustained the award of exemplary damages, and a like award might be made in another trial. In the interests of justice this litigation should be put to rest at the present stage and under the following conditions.

If plaintiff and respondent within ten days after the filing of this opinion files a written consent to a modification of the judgment, eliminating the award of exemplary damages, the judgment will be modified and affirmed; if such consent be not filed the judgment will be reversed and the purported appeal from the order denying motion for new trial will be dismissed.

Wood (Parker), J., and Vallée, J., concurred.

On November 14, 1956, the following opinion was rendered:

THE COURT.—Plaintiff and respondent having filed herein a written consent to a modification of the judgment eliminating the award of exemplary damages in accordance with the opinion heretofore filed, the judgment appealed from is modified by striking out the award of $3,000 as exemplary damages and, as so modified, is affirmed. Each party shall bear his own costs on appeal.

Petitions for a rehearing were denied December 13, 1956.