[Civ. No. 20003. Fourth Dist., Div. Two. Feb. 13, 1979.]

JEANETTE HAWKINS, Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
KAISER FOUNDATION HOSPITAL et al., Real Parties in Interest.

**COUNSEL**

Olen G. Miller, Samuel Shore and Gary M. Paul for Petitioner.

No appearance for Respondent.

Thelen, Marrin, Johnson & Bridges, James W. Baldwin, Curtis A. Cole, Michael L. Halpern and Arthur P. Morello, Jr., for Real Parties in Interest.

**OPINION**

**TAMURA, Acting P. J.**—Petitioner seeks a writ of mandate to set aside an order compelling her to arbitrate a wrongful death claim for the death of her husband allegedly resulting from medical malpractice committed by Kaiser Foundation Hospital and Southern California Permanente

Medical Group (hereafter defendants).[1] The trial court ruled that petitioner was bound by the arbitration provisions of the master contract of a Kaiser Foundation Health Plan (Kaiser Plan) in which decedent had enrolled himself and petitioner. We issued an alternative writ and order to show cause.

The following facts are not in dispute:

In November 1973, decedent filed an application to enroll himself and petitioner in a Kaiser Plan. The application read: "I hereby apply for the enrollment of myself and those members of my family listed. I understand that if this application is accepted by Kaiser Foundation Health Plan the benefits for which we will be eligible will be in accordance with the master contract applicable to the type of coverage for which we are enrolled." The application was accepted effective January 1, 1974, and thereafter both decedent and petitioner availed themselves of the services provided under the plan through defendants.

In December 1976, decedent died of cancer. Petitioner filed a wrongful death action against defendants alleging that her husband's death was the proximate result of defendants' negligent failure to make an early diagnosis of the cancer. Defendants answered and petitioned for an order to compel arbitration of petitioner's claim pursuant to section 10 of the master contract of the Kaiser Plan. The section provided in pertinent part: "Any claim arising from the violation of a legal duty incident to this Agreement shall be submitted to binding arbitration, if the claim is asserted: [¶] (1) By a Member, or by a Member's heirs or personal representative ('Claimant'), [¶] (2) On account of death or bodily injury arising out of the rendition or failure to render services under this Agreement, irrespective of the legal theory upon which the claim is asserted."

The judge rendered an intended decision in which he ruled that a husband contracting for prepaid health care services for himself and his wife has implied authority to agree that any medical malpractice claim asserted by either will be submitted to arbitration. Findings and

---

[1]Although an order compelling arbitration is nonappealable (*Wheeler* v. *St. Joseph Hospital*, 63 Cal.App.3d 345, 353 [133 Cal.Rptr. 775, 84 A.L.R.3d 343]), a party aggrieved by such an order may in a proper case seek appellate review of the order by petition for writ of mandate. (*Bertero* v. *Superior Court*, 216 Cal.App.2d 213, 222 [30 Cal.Rptr. 719].) By issuing an alternative writ, we necessarily determined that the instant case is a proper one for the exercise of our original jurisdiction through the prerogative writ. (*City of Huntington Beach* v. *Superior Court*, 78 Cal.App.3d 333, 339 [144 Cal.Rptr. 236].)

conclusions were made in accordance with the intended decision and the court entered its order compelling arbitration and staying the wrongful death action.

Petitioner contends that since she never agreed to be bound by the arbitration provision of the master contract nor ever authorized her husband to do so on her behalf, she cannot be compelled to submit her claim to arbitration. ■ We have concluded that this case is governed by principles enunciated by the Supreme Court in *Madden* v. *Kaiser Foundation Hospitals,* 17 Cal.3d 699 [131 Cal.Rptr. 882, 552 P.2d 1178], and *Doyle* v. *Giuliucci,* 62 Cal.2d 606 [43 Cal.Rptr. 697, 401 P.2d 1], and that the order below must be upheld.

■ There is a strong judicial policy in this state favoring arbitration over litigation as a means of settling disputes, including disputes arising out of medical malpractice claims, because arbitration is less expensive and more expeditious than litigation and, moreover, relieves court congestion. (*Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699; *Wheeler* v. *St. Joseph Hospital, supra,* 63 Cal.App.3d 345, 355-356.) The Legislature has also acknowledged arbitration to be a proper, if not a desirable, method of resolving medical malpractice claims, including wrongful death claims based on medical malpractice. (See e.g., Code Civ. Proc., § 1295;[2] Health & Saf. Code, § 1373.)

■ The strong public policy favoring arbitration, however, cannot displace the necessity for an agreement to arbitrate. A person cannot be compelled to accept arbitration of a dispute he has not agreed to submit to arbitration. (*Steelworkers* v. *Warrior & Gulf Co.,* 363 U.S. 574, 582-583 [4 L.Ed.2d 1409, 1417-1418, 80 S.Ct. 1347]; *Freeman* v. *State Farm Mut. Auto. Ins. Co.,* 14 Cal.3d 473, 479; *Wheeler* v. *St. Joseph Hospital, supra,* 63 Cal.App.3d 345, 354-355.) Here, petitioner concedes that her husband was bound by the arbitration provision of the master contract but

---

[2]Code of Civil Procedure section 1295 specifies the requirements for a valid arbitration provision for settlement of disputes arising out of "professional negligence of a health care provider." Subdivision (g)(2) provides: "(g) For the purposes of this section: . . . [¶] (2) 'Professional negligence' means a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or *wrongful death,* provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." (Italics added.)

maintains that she is not bound because she never personally agreed to the provision nor ever authorized her husband to do so on her behalf.[3]

The three cases which are pertinent to the issues here presented are *Doyle* v. *Giuliucci, supra,* 62 Cal.2d 606; *Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699; and *Rhodes* v. *California Hospital Medical Center,* 76 Cal.App.3d 606 [143 Cal.Rptr. 59].

In *Doyle,* the father of a minor child contracted for medical services with the Ross-Loos Medical Group obligating the group to provide the same services to dependents as were available to the subscriber. The contract called for arbitration of any tort or contract claim arising under it. The central issue was whether the minor child was bound by the arbitration provision of the contract. In an unanimous opinion authored by Chief Justice Traynor, the Supreme Court held that the power of a parent to bind his child to arbitrate a claim arising under a health care contract was implicit in the parent's duty to provide for the care of his child. The court reasoned that recognition of the parent's power to bind a child to an arbitration provision of a health care contract would assure children the benefit of group health services which might not otherwise be available because of a minor's right to disaffirm contracts. Furthermore, the court observed that the arbitration provision was a reasonable restriction upon the minor's rights because it did "no more than specify a forum for settlement of disputes." (*Doyle* v. *Giuliucci, supra,* 62 Cal.2d 606, 610.)[4]

In *Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699, the question was whether a state employee enrolled in a Kaiser Health Plan was bound by an amendment to the group health care contract negotiated by the state retirement board making arbitration the sole means of resolving medical malpractice disputes. The court held that the statutory authorization empowering the state retirement board to negotiate contracts for group medical plans for state employees made the board the agent or representative of state employees and that the agency carried with it the implied authority to agree to the arbitration provision.

---

[3]Petitioner did not seek to avoid the effect of the arbitration provision of the master contract on adhesion contract principles. Consequently, this case does not present the issues considered in *Wheeler* v. *St. Joseph Hospital, supra,* 63 Cal.App.3d 345.

[4]The holding in *Doyle* v. *Giuliucci, supra,* 62 Cal.2d 606, is now codified in Code of Civil Procedure section 1295, subdivision (d), which provides: "Where the contract is one for medical services to a minor, it shall not be subject to disaffirmance if signed by the minor's parent or legal guardian."

Expressing the view that *Doyle* was illustrative of the implied authority of an agent or fiduciary to bind the beneficiary to an arbitration provision in a health care contract, the court stated: "We do not believe *Doyle* can be distinguished from the instant case because it involves a parent contracting on behalf of a child instead of an agent contracting on behalf of its principal. Both parent and agent serve as fiduciaries with limited powers, and if, as *Doyle* holds, the implied authority of a parent includes the power to agree to arbitration of the child's malpractice claims, we perceive no reason why the implied authority of an agent should not similarly include the power to agree to arbitration of the principal's malpractice claims. [¶] We therefore conclude that an agent or other fiduciary who contracts for medical treatment on behalf of his beneficiary retains the authority to enter into an agreement providing for arbitration of claims for medical malpractice." (*Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699, 709, fn. omitted.)

The third case is *Rhodes* v. *California Hospital Medical Center, supra,* 76 Cal.App.3d 606. There, when Mrs. Rhodes entered the hospital she signed a hospital admission agreement containing a provision that any medical malpractice dispute arising out of services rendered under the agreement would be submitted to arbitration. Apparently because of doubts concerning Mrs. Rhodes' competency, Mr. Rhodes signed a like agreement for his wife as her agent. Upon Mrs. Rhodes' death, her husband and son brought a wrongful death action alleging that the death resulted from the negligence of defendant hospital. The hospital's petition to compel arbitration on the basis of the arbitration provision of the hospital admission agreement was denied and on appeal the order was affirmed. The reviewing court observed that there was no arbitration agreement executed by Mr. Rhodes on his own behalf or by the son and distinguished *Doyle* as a case resting on the power of a parent to contract for the benefit of the child. The court concluded that Mrs. Rhodes' agreement to arbitrate her possible cause of action did not preclude her heirs' contractual and procedural rights to maintain the wrongful death action.

We cannot agree with petitioner's contention that *Rhodes* is "on all fours" with the case at bench. *Rhodes* involved an individual patient contracting for medical services for herself whereas in the instant case the husband contracted for health care services for himself and his wife. In our opinion the instant case is governed by *Madden* and *Doyle* as interpreted by *Madden*. ▮ Spouses have mutual obligations to care for and support the other (Civ. Code, § 242), including the obligation to

provide medical care (*Sanderson v. Niemann,* 17 Cal.2d 563, 568-569 [110 P.2d 1025]; see *Louie* v. *Hagstrom's Food Stores,* 81 Cal.App.2d 601, 614 [184 P.2d 708]), and they occupy a fiduciary relationship to each other. (*Estate of Cover,* 188 Cal. 133, 143 [204 P. 583]; *Dolliver* v. *Dolliver,* 94 Cal. 642, 646-647 [30 P. 4]; *Steiner* v. *Steiner,* 160 Cal.App.2d 665, 669 [325 P.2d 109]; *Auclair* v. *Auclair,* 72 Cal.App.2d 791, 802 [165 P.2d 527]; see *O'Neil* v. *Spillane,* 45 Cal.App.3d 147, 153 [119 Cal.Rptr. 245]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 334, p. 281, and 1978 Supp., § 334, p. 44; 6 Witkin, Summary of Cal. Law (8th ed. 1974) Husband and Wife, § 4, pp. 4876-4877.) ■ Decedent had the power to contract for the health plan for himself and his wife and, as in *Doyle* as viewed by *Madden,* implicit in that power is the implied authority to agree for himself and his wife to arbitrate claims arising out of medical malpractice.

Although *Madden* and *Doyle* involved claims for personal injuries sustained by the "beneficiary" we see no reason why the rationale of those cases should not extend to a wrongful death claim asserted by a "beneficiary" if the agreement so provides. The arbitration provision of the master contract for the Kaiser Plan covers claims asserted: "By a Member, or by a Member's heirs or personal representative ('Claimant') . . . [o]n account of death or bodily injury arising out of the rendition or failure to render services under this Agreement, . . ." Those provisions manifestly contemplate arbitration of a claim for the wrongful death of a "Member" when asserted by a surviving "Member."[5]

We conclude that defendants were entitled to the order compelling petitioner to arbitrate her wrongful death claim. The alternative writ is discharged and the petition is denied.

Kaufman, J., and McDaniel, J., concurred.

---

[5]Since the only heir asserting the wrongful death claim in the instant case is a "Member" of the plan, the question whether the arbitration provision would be binding upon heirs who are not "Members" is not before us and we express no opinion on it. For a view that heirs should be bound by such arbitration provisions, see Comment, *California Medical Malpractice Arbitration and Wrongful Death Actions* (1978) 51 So.Cal.L.Rev. 401.