[No. B116567. Second Dist., Div. Four. Nov. 30, 1998.]

KATHLEEN SANCHEZ, Plaintiff and Appellant, v.
BALLY'S TOTAL FITNESS CORPORATION, Defendant and
Respondent.

### COUNSEL

Cory C. Brendel for Plaintiff and Appellant.

Manning, Marder & Wolfe and Uzzi O. Raanan for Defendant and Respondent.

### OPINION

**VOGEL, (C. S.), P. J.—**

#### INTRODUCTION

Plaintiff Kathleen Sanchez sued defendant Bally's Total Fitness Corporation in negligence for injuries sustained during a slide aerobics class. The trial court granted defendant's motion for summary judgment on two separate and independent grounds: (1) plaintiff's claim was barred by the doctrine of primary assumption of the risk; (2) plaintiff's claim was barred by a release she executed when she joined the health club five years earlier. We conclude the court properly granted summary judgment pursuant to the terms of the release of liability. We therefore affirm the judgment.

#### FACTUAL BACKGROUND

Plaintiff, a senior real estate officer for the Metropolitan Transportation Authority, first joined the health club in June 1990. Her application for membership contained the following clause: "Accidents/Injury: The member

agrees that all exercises and use of the fitness centers are undertaken by the member at the sole risk of the member, and that the fitness center shall not be liable for any claims for injuries or damages whatsoever to person or property of the member or of a guest of a member arising out of or connected with the use of the fitness center. Member agrees to indemnify and to hold the center and its employees harmless from all claims by or liability to member or member's guest, except for those claims arising out of the center[']s knowingly failing to correct a dangerous situation brought to its attention." Plaintiff and a representative of defendant Bally's Total Fitness Corporation signed the application on June 12, 1990.

On November 2, 1995, plaintiff slipped and fell, while participating in a slide aerobics class offered by defendant. Slide aerobics involves the use of an extremely slippery six-foot mat with rubber bumpers at each end of the mat.[1] The purpose of the slide portion of the mat is to allow a participant, with knees slightly bent and back straight, to slide from side to side, creating an aerobic exercise. A participant wears special socks to facilitate sliding back and forth on the mat.

The accident occurred between exercises, approximately 20 minutes after plaintiff had arrived and joined in the class. Plaintiff, on the left side of the mat, decided to cross to the right. She took small steps across the slide part of the mat. She walked very slowly and cautiously, as if walking on ice, to avoid slipping. Nonetheless, she slipped, injuring her left wrist. Plaintiff now claims that had she received proper instruction(s) on how to properly cross the slide, the accident would not have happened.

## CONTENTS

Plaintiff contends that the release clause is ineffective to relieve the health club of liability for her injuries because the exculpatory provision is not set out in large or italicized letters emphasizing to the reader that she is foregoing her right to assert a claim for injuries and damages and that she will hold Bally's harmless from all claims or liability to plaintiff. She further contends that the provision is inadequate because the word "negligence" is nowhere to be found among its terms.

## DISCUSSION

Plaintiff's argument that the release clause is ineffective because it is not highlighted or italicized or differentiated by the size of the printed words is irrelevant because she fails to show that she was unaware of the exculpatory

[1]Plaintiff also unsuccessfully sued Reebok Corporation, the manufacturer of the mat.

language or was otherwise misled. She admitted in her deposition that she signed it and read it and was aware that she was entering into a contract at the time. Moreover, when she signed it she was aware that she had three days within which she could rescind the contract. Given that plaintiff is a senior real estate officer engaged in leasing and managing Metropolitan Transportation Authority properties, she can hardly claim that the importance of reading and understanding the contract was lost on her.

Plaintiff's separate statement of facts includes the following admission: "Plaintiff was aware she was entering a contract when she signed the agreement. Her work as senior real estate officer entails dealing with contracts." It is self-evident that plaintiff was not led astray by the size or style of the type or the general form of the agreement.

In support of her argument that the release provision is ineffective due to the absence of the term "negligence," plaintiff provides a survey of cases involving exculpatory clauses which were found to be ineffective and which did not include the term "negligence." Plaintiff argues that *Celli* v. *Sports Car Club of America* (1972) 29 Cal.App.3d 511 [105 Cal.Rptr. 904], *Ferrell* v. *Southern Nevada Off-Road Enthusiasts, Ltd.* (1983) 147 Cal.App.3d 309 [195 Cal.Rptr. 90], *Scroggs* v. *Coast Community College Dist.* (1987) 193 Cal.App.3d 1399 [239 Cal.Rptr. 916], and *Hohe* v. *San Diego Unified Sch. Dist.* (1990) 224 Cal.App.3d 1559 [274 Cal.Rptr. 647] hold that a release phrased in general language is ineffective to preclude liability for negligence that is the proximate cause of the indemnitor's damages. It is true that these cases all involved releases which failed to expressly waive liability for the indemnitee's *negligence.* However, a review of these authorities reveals that the fundamental predicate for their holding is that the exculpatory provisions were not clear, unambiguous, or comprehensible or were formatted so as to obscure their inclusion in the agreements.

The rule governing the validity and interpretation of exculpatory clauses is summarized in *Hohe* v. *San Diego Unified Sch. Dist., supra,* 224 Cal.App.3d at page 1567: "[A]n analysis based on the 'active-passive dichotomy' or on the absence or presence of a specific reference to 'negligence' is not dispositive. (See *Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622, 632 . . . .) 'It is manifest that it is the intent of the parties which the court seeks to ascertain and make effective. Where . . . the circumstances of the claimed wrongful conduct dictate that damages resulting therefrom were intended to be dealt with in the agreement, there is no room for construction of the agreement. It speaks for itself.' [Citations.] Whether a release bars recovery against a negligent party 'turns primarily on contractual interpretation, and it is the intent of the parties as expressed in

the agreement that should control.' (*Rossmoor Sanitation, Inc.* v. *Pylon, Inc., supra,* 13 Cal.3d at p. 633.) [¶] . . . Our analysis is not based on the mechanical application of some formula. The presence or absence of the words 'negligence' or 'bodily injury' is not dispositive. We look instead to the intention of the parties as it appears in the release forms before the court."

▮ Here plaintiff applied for membership in a health club: a facility in which she could exercise and would have access to exercise equipment. It is not remarkable that a health club would recognize that providing a facility in which members would engage in physical exercise and use exercise equipment involves a risk of injuries to its members. Therefore, Bally's rationally required a release and assumption of risk as a condition of membership. Plaintiff hardly argues that the language of the release and assumption of the risk clause is concealed by the formatting of the document or that it is unclear and ambiguous or that her injuries are the result of unforeseen risks not reasonably associated with membership in a health club. Her fundamental contention is that, because the release and assumption of the risk clause does not specifically state that she is releasing Bally's from its *"negligent"* conduct, the provision is invalid as a matter of law. This is not so. The inclusion of the term "negligence" is simply not required to validate an exculpatory clause.

In *Leon* v. *Family Fitness Center (#107), Inc.* (1998) 61 Cal.App.4th 1227 [71 Cal.Rptr.2d 293], the plaintiff joined a health club and signed an application for membership which contained a release and assumption of the risk provision. The plaintiff was injured when a sauna bench on which he was lying collapsed beneath him at the defendant's facility. The trial court granted a summary judgment in favor of Family Fitness based on the release and assumption of risk provision in the contract. Although the Court of Appeal found the exculpatory provision deficient in format and ambiguous and misleading by its terms, its reversal of the summary judgment is fundamentally premised on the rationale that the injury occurred as a result of an incident not reasonably contemplated by the parties. "[A]n individual who understandingly entered into the membership agreement at issue can be deemed to have waived any hazard known to relate to the use of the health club facilities. These hazards typically include the risk of a sprained ankle due to improper exercise or overexertion, a broken toe from a dropped weight, injuries due to malfunctioning exercise or sports equipment, or from slipping in the locker-room shower. On the other hand, no Family Fitness patron can be charged with realistically appreciating the risk of injury from simply reclining on a sauna bench. Because the collapse of a sauna bench when properly utilized is not a 'known risk,' we conclude Leon cannot be

deemed to have assumed the risk of this incident as a matter of law."[2] (*Id.* at p. 1234.)

It is obvious that patrons of health clubs sign release and assumption of risk provisions in contemplation of injuries that occur in the course of using the facilities for the primary purpose of exercising and using exercise equipment. Therefore, the injury suffered by plaintiff in the present matter is one reasonably within the contemplation of the parties. In fact, plaintiff offered no evidence to the contrary and admits that she read and signed the contract and knew that she was signing a contract. Her work experience clearly indicates that she had the capacity to understand the significance of the exculpatory provisions of the contract. In plaintiff's separate statement of facts she concedes as undisputed "[p]laintiff was aware she was entering a contract when she signed the agreement. Her work as senior real estate officer entails dealing with contracts. [¶] As part of the agreement between plaintiff and defendant, plaintiff agreed that 'Accidents/Injury: The member agrees that all exercises and use of the fitness centers are undertaken by the member at the sole risk of the member, and that the fitness center shall not be liable for any claims for injuries and damages whatsoever to person or property of the member or of a guest of a member arising out of or connected with the use of the fitness center. [M]ember agrees to indemnify and to hold the center and its employees harmless from all claims by or liability to member or member's guest, except for the claims arising out of the center's knowingly failing to correct a dangerous situation brought to its attention.' "

We cannot fathom how plaintiff can argue that she has not released Bally's and assumed the risk for her injury. Her contention that the absence of "[s]ome sort of verbiage, specifically describing in some adequate fashion the negligence of the defendant" renders the release invalid is nothing more than her insistence that the term "negligence" or the specific incident of active or passive negligence must appear in the provision. That, however, is not the law. ■ "While it is true that the express terms of any release

---

[2]The release provision at issue in *Leon v. Family Fitness Center (#107), Inc., supra,* 61 Cal.App.4th 1227, provides as follows: "Buyer is aware that participation in a sport or physical exercise may result in accidents or injury, and Buyer assumes the risk connected with the participation in a sport or exercise and represents that Member is in good health and suffers from no physical impairment which would limit their use of FFC's facilities. Buyer acknowledges that FFC has not and will not render any medical services including medical diagnosis of Member's physical condition. Buyer specifically agrees that FFC, its officers, employees and agents shall not be liable for any claim, demand, cause of action of any kind whatsoever for, or on account of death, personal injury, property damage or loss of any kind resulting from or related to Member's use of the facilities or participation in any sport, exercise or activity within or without the club premises, and Buyer agrees to hold FFC harmless from same." (61 Cal.App.4th at p. 1231.)

agreement must be applicable to the particular misconduct of the defendant (Prosser & Keeton on Torts (5th ed. 1984) § 68, pp. 483-484), that does not mean that every possible specific act of negligence of the defendant must be spelled out in the agreement or even discussed by the parties." (*Madison* v. *Superior Court* (1988) 203 Cal.App.3d 589, 601 [250 Cal.Rptr. 299].)

■ Here the specific activity is sufficiently described by the terms of the release and assumption of risk provision by reference to "injuries . . . arising out of or connected with the use of the fitness center." Bally's has aptly noted that: "[w]ere the word 'negligence' not read into the waiver and release clause, it would be impossible to imagine what appellant was releasing respondent from, as appellant would already be unable to hold Bally liable for injuries not involving Bally's negligence."

■ Whether a contract provision is clear and unambiguous is a question of law, not fact. " 'Where, as here, no conflicting parol evidence is introduced concerning the interpretation of the document, "construction of the instrument is a question of law, and the appellate court will independently construe the writing." ' " (*Allabach* v. *Santa Clara County Fair Assn.* (1996) 46 Cal.App.4th 1007, 1013 [54 Cal.Rptr.2d 330].) ■ We find that the release and assumption of risk provision is clear, explicit, and comprehensible in itself and when considered and read in whole with the entire agreement. (See *Paralift, Inc.* v. *Superior Court* (1993) 23 Cal.App.4th 748, 755 [29 Cal.Rptr.2d 177].) Therefore, plaintiff's cause of action is barred by the terms of the agreement.

## DISPOSITION

The judgment is affirmed.

Epstein, J., and Hastings, J., concurred.